IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01956-WYD-BNB

ANGELA HAYNES,

    Plaintiff,

v.

POUDRE VALLEY HEALTH CARE, INC., d/b/a POUDRE VALLEY HOSPITAL,

    Defendant.

**ORDER**

I.    INTRODUCTION AND BACKGROUND

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed August 13, 2010 [ECF No. 38]. Defendant seeks summary judgment in its favor on Plaintiff's claims for retaliatory discharge in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and Colorado public policy.

Voluminous facts have been asserted by both parties in connection with the summary judgment motions and briefing, the vast majority of which are undisputed. I will summarize below those facts which I deem pertinent to my ruling. I have, however, construed all of the facts in the light most favorable to Plaintiff as I must for purposes of this summary judgment motion. *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).

Plaintiff is a licensed respiratory therapist in Colorado and worked for Defendant

-1-

hospital from December 8, 2003, until her termination on or about January 29, 2009. While employed by Defendant, Plaintiff was disciplined with several verbal counselings as well as first and final warnings for various performance issues including poor attendance and communication issues, unsatisfactory job performance, unprofessional behavior, failure to properly document, and violations of Defendant's confidentiality policy. Plaintiff does not dispute that she received this discipline, although she disputes the factual circumstances surrounding some of the incidents in question, and maintains that some of the incidents involve conduce that was not particularly egregious.

Plaintiff also received annual performance reviews, some of which indicate areas for growth and improvement. In her March 2007, performance review, her supervisor noted most of Plaintiff's performance areas as having been achieved or an area of growth, and rated her as unsatisfactory in one area. In her March 2008, performance review, Plaintiff received her best evaluation to date and her supervisor noted that she had shown improvement in recent months.

On October 19, 2008, one of Defendant's employees discovered an anonymous complaint letter that Plaintiff attempted to fax to the Colorado Department of Regulatory Agencies ("DORA") alleging unethical and unsafe conduct by another respiratory therapist employed by Defendant. The letter identified a patient by name and described circumstances concerning the deaths of two babies. The letter alleges that the respiratory therapist was involved in the deaths of the babies, and that management at Defendant hospital covered up her misconduct. In addition, the complaint letter alleges that the respiratory therapist charged the identified patient for a medication dosage that

-2-

was not administered, and that this same respiratory therapist had recorded fraudulent charges on other occasions.

The employee who discovered the complaint letter notified Human Resources and the Compliance Department to determine whether a violation of the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320 ("HIPAA") had occurred. Defendant began an investigation and interviewed Plaintiff. During the interview, Plaintiff denied that she authored or attempted to fax the complaint letter, but she conveyed the same concerns and issues concerning the respiratory therapist identified in the complaint letter. After the interview Plaintiff was suspended for a suspected violation of HIPPA and Defendant's internal confidentiality policies based on the confidential patient information included in the complaint letter.

During a further investigation into the allegations of misconduct set forth in the complaint letter, Defendant discovered two unrelated instances of misconduct by Plaintiff that occurred in September of 2008. Defendant contends that on September 21, 2008, Plaintiff violated Defendant's policy concerning reading back verbal orders from physicians and wrote down the wrong dosage of a medication administered to a patient; and that on September 26, 2008, Plaintiff accessed a patient's medical records even though she had not provided care for that patient on the date of access, and failed to document any reason why she had accessed the records. Plaintiff does not dispute that these violations occurred, but denies that she is solely responsible for the documentation error, and contends that the "read-back" error constitutes a relatively minor violation.

When Plaintiff returned to work following her suspension, she was immediately terminated. The stated reason for her termination was "continued substandard and unsatisfactory job performance." Specifically, her termination letter cited the two incidents of misconduct occurring in September, 2008. Plaintiff's termination letter also sets forth the dates all prior disciplinary action. Plaintiff's termination letter does not reference the complaint letter or Plaintiff's suspension.

Plaintiff contends that the real motivation behind Defendant's decision to terminate her was retaliation for authoring and attempting to send the complaint letter. Plaintiff initially asserted three retaliation claims - a claim for violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, a claim for retaliatory discharge in violation of public policy under Colorado, and a claim for retaliatory discharge under Title VII. Plaintiff states in her response to the motion for summary judgment that she now wishes to withdraw her Title VII claim. Accordingly, Plaintiff's Title VII claim is hereby dismissed.

II.     ANALYSIS

    A.     <u>Summary Judgment Standard</u>

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v.*

*Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991). However, the nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Fed. R. Civ. P. 56(e) requires that a nonmoving party's evidence be "identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

  B. <u>False Claims Act</u>:

Defendant asserts that it is entitled to summary judgment on Plaintiff's False Claims Act Retaliation claim because Plaintiff cannot demonstrate that her actions were taken "in furtherance of" of a False Claims Act ("FCA") suit. The FCA provides that any employee who is discharged because of lawful acts done "in furtherance of an action under this section," is entitled to relief. *See* 31 U.S.C. § 3730(h) (2006).[1] While an

---

[1] On May 20, 2009, this section of the FCA was amended to relax the standard for showing protected activity. However, Plaintiff's conduct will be evaluated under the prior version of the statute, which applies to conduct prior to May 20, 2009.

individual need not actually file a *qui tam* action in order to maintain a retaliation claim under § 3730(h), under the plain language of the statute, the activity promoting the individual's discharge must have been taken "in furtherance of" an FCA enforcement action.  *See United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996) (internal quotations omitted) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)).  Accordingly, "when seeking legal redress for retaliatory discharge under the FCA, plaintiff has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government."  *Ramseyer*, 90 F.3d at 1522.  If defendants were not afforded sufficient notice, then if follows that their actions could not constitute retaliation.  *Id.*

Plaintiff contends that the basis for her FCA retaliation claim is her attempt to report Medicare and Medicaid fraud in the complaint letter that she eventually faxed to DORA.  It is undisputed that Plaintiff never filed a *qui tam* action or assisted in the filing of a *qui tam* action.  It is also undisputed that the complaint letter does not mention Medicare or Medicaid fraud.  Rather, the complaint letter accuses another respiratory therapist of charging a patient (who was not on Medicare or Medicaid) for a dose of medication that was not actually given, and further alleges that this respiratory therapist had been suspected of similar misconduct in the past, and that this misconduct had been reported to supervisors at Defendant hospital.  In her response to the motion for summary judgment Plaintiff surmises, that it was "likely" that over half of the alleged

fraudulent charges involved Medicaid or Medicare.  However, this assertion is completely unsubstantiated.

I find that Plaintiff has not demonstrated that the complaint letter constitutes an activity taken in furtherance of an FCA enforcement action.  Significantly, the complaint letter does not mention Medicare or Medicaid, nor does it provide any specific information about false charges other than a single incident involving a patient who was not on Medicare or Medicaid.  The complaint letter makes no mention of fraudulent activity against the federal government, and cannot reasonably be construed as an attempt to report Medicare or Medicaid fraud.  Plaintiff's suggestion that her statement that the respiratory therapist named in the complaint letter had previously made false charges and that is it "likely" that over half of these involved Medicare or Medicaid patients is not sufficient to put Defendants on notice that Plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government.  Plaintiff's *post hoc* interpretation of the complaint letter is not supported by the plain language of the document, or any other evidence in the record, and is insufficient to create a genuine issue of material fact.  Therefore, I find that Defendant is entitled to summary judgment on this claim.

    C.    <u>Retaliatory Discharge in Violation of Public Policy</u>:

I now turn to Defendant's contention that they are entitled to summary judgment on Plaintiff's claim for retaliatory discharge in violation of public policy.  As an initial matter, because I find that Plaintiff has failed to demonstrate she is entitled to relief under the provisions of the FCA, I reject Defendant's contention that her state law claim

is preempted because Plaintiff has an adequate remedy under the FCA.

Defendant also asserts, however, that Plaintiff cannot establish the requisite elements of a retaliatory discharge claim.  In connection with this claim, Plaintiff contends that she was discharged for reporting in the complaint letter that two infant deaths at Defendant hospital were the result of misconduct by a respiratory therapist employed by Defendant, and that supervisors and management at Defendant hospital covered up the misconduct.

According to Defendant, Plaintiff has failed to articulate a particular statute or clearly expressed public policy in support of her claim, and cannot demonstrate that there is any causal connection between her termination and her alleged reporting.

Under Colorado law, an employee will have a cognizable claim for wrongful discharge "if the discharge of the employee contravenes a clear mandate of public policy."  *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107 (Colo. 1992).  Claims for wrongful discharge under the public-policy exception includes termination of an employee for "whistle blowing" activity or other conduct exposing the employer's alleged wrongdoing.  *Id.*; *see also Kearl v. Portage Environmental, Inc.*, 205 P.3d 496, 499 (Colo. App. 2008).  Thus, I find that Plaintiff is entitled to proceed with her wrongful discharge claim under her theory that she was terminated for sending the complaint letter.

Defendant contends, however, that Plaintiff cannot demonstrate a causal connection between her discharge and the complaint letter because her termination "was the culmination of years of documented and repeated performance issues and

serious policy violations." I find, however, that Plaintiff has raised a genuine issue of material fact with respect to the motivation for her discharge. While Plaintiff has admitted to various violations and performance issues while employed by Defendant, she contends that these violations were minor. As to the two instances of misconduct specifically noted in her termination letter, Plaintiff contends that she provided a reasonable explanation for the incidents, and contends that the incidents themselves were relatively minor. Plaintiff also raises issues of fact with respect to her suspension. Plaintiff notes that her suspension following discovery of the complaint letter was purportedly based on her disclosure of confidential patient information in the complaint letter. However, it is undisputed that this conduct did not constitute a HIPPA violation because patient information can be provided to a proper regulatory agency. It is also undisputed that Plaintiff was terminated for reasons unrelated to the suspension. Accordingly, I find that there are genuine issues of material fact regarding Plaintiff's retaliatory discharge claim, and that summary judgment is not proper on this claim.

III.     CONCLUSION

Therefore, it is hereby

ORDERED that THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed August 13, 2010 [ECF No. 38] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

Dated: March 31, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge